UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHLEY HICKS and KRISTIN RAYMOND, *on behalf of themselves and all other employees similarly situated,*<br><br>                              *Plaintiffs,*<br><br>       v.<br><br>T.L. CANNON CORP., d/b/a APPLEBEE'S or APPLEBEE'S NEIGHBORHOOD BAR AND GRILL; T.L. CANNON MANAGEMENT CORP.; TLC WEST, LLC; TLC CENTRAL, LLC; TLC UTICA, LLC; TLC NORTH, LLC; DAVID A. STEIN,    *individually and as Owner and Chairman of T.L. Cannon Corp. and as Director and Chairman of T.L. Cannon Management Corp.;* MATTHEW J. FAIRBAIRN,    *individually and as Owner and President of T.L. Cannon Corp. and as Director and Chief Executive Officer of T.L. Cannon Management Corp.;* and JOHN A. PERRY,    *individually and as Vice-President and Director of Operations of T.L. Cannon Corp. and as President of T.L. Cannon Management Corp.,*<br><br>                              *Defendants.* | CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>Civil Action No.<br>No. 12-cv-6517 |

Plaintiffs Ashley Hicks and Kristin Raymond ("Named Plaintiffs"), on behalf of themselves and all other persons similarly situated, known and unknown ("Plaintiffs"), through their attorneys and for their complaint against Defendants T.L. CANNON CORP., d/b/a APPLEBEE'S or APPLEBEE'S BAR AND GRILL; T.L. CANNON MANAGEMENT CORP.; TLC WEST, LLC; TLC CENTRAL, LLC; TLC UTICA, LLC; TLC NORTH, LLC; DAVID A. STEIN, individually and as Owner and Chairman of T.L. Cannon Corp. and as

Director and Chairman of T.L. Cannon Management Corp.; MATTHEW J. FAIRBAIRN, individually and as Owner and President of T.L. Cannon Corp. and as Director and Chief Executive Officer of T.L. Cannon Management Corp.; and JOHN A. PERRY, individually and as Vice-President and Director of Operations of T.L. Cannon Corp. and as President of T.L. Cannon Management Corp., (collectively, "Applebee's" or "Defendants"), states as follows:

## NATURE OF CLAIM

1.  This is a proceeding for declaratory relief, monetary damages or and equitable relief to redress the deprivation of rights secured to Plaintiffs under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL").

2.  Applebee's has a policy to pay Plaintiffs subminimum wage rates as described in more detail in Plaintiffs' Affirmations submitted in Support of Plaintiffs' Motion for Expedited Notice Pursuant to the Fair Labor Standards Act.

3.  Applebee's policy is to pay these subminimum rates to Plaintiffs even: a) when the Plaintiffs are performing jobs unrelated to their tipped job; b) when the Plaintiffs are spending more than 20% of their time on jobs that are related to, but not themselves, their tipped job; c) on days in which the Plaintiffs spend more than 20% of their work day performing jobs in non-tipped occupations; and d) on days in which the Plaintiffs are assigned to work in an occupation in which tips are not customarily received.

## JURISDICTION AND VENUE

4.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action

to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; and under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and under 29 U.S.C. § 216(b).

5. This Court's supplemental jurisdiction of claims arising under the NYLL is also invoked.

6. Venue is appropriate in the Western District of New York since the allegations arose in this district, Defendants do business in this district and the Plaintiffs reside in this district.

## PARTIES

A. **Plaintiffs**

*Named Plaintiffs*

7. Ashley Hicks and Kristin Raymond were employees of Defendants under the FLSA and NYLL, were employed within this District during the relevant time period, and resided within this District.

8. Ashley Hicks worked for Defendants from approximately December 2005 to December 2010 and worked for the Defendants at the following locations: Pittsford, Henrietta, and Irondequoit.

9. Kristin Raymond worked for Defendants from approximately 2002 to December 2011 at the Gates location.

10. The Named Plaintiffs, along with other employees, were subject to Applebee's policy which paid the plaintiffs at subminimum wages.

11. While the Named Plaintiffs, along with other employees, were paid at

subminimum wages, Applebee's policy required them to work in jobs that were unrelated to their tipped jobs or were jobs that were not directed towards producing tips.

12. Some examples of the jobs the Named Plaintiffs, along with other employees, had to perform under Applebee's policy for the Defendants at subminimum wages were: cleaning the dining room and all the wood work with Murphy oil soap, dusting the artifacts and memorabilia hanging on the walls, windexing all the photos on the walls, scrubbing the legs of all the chairs, dusting all TVs, wiping down the wrought iron, cleaning out the cracks of the booths, cleaning and cutting vegetables, spices, fruits, preparing sanitation buckets, preparing dessert shooters, setting up the salad bar, setting up the expo line, breaking apart and cleaning the soda machine, breaking down the salad bar, breaking down the expo line, removing and cleaning light fixtures, scrapping the gum from under every table, removing all the items on the shelves, cleaning and wiping down all the shelves in the kitchen, vacuuming, sweeping, dusting, sanitizing, replacing all paper products in the bathrooms, cleaning the bathroom floors, washing the store's windows, bleaching coffee cups, mugs, pots, tea kettles, cleaning doo-bops, cleaning woodies, cleaning skillets, washing dishes, rolling silverware, filling creamers, filling salt and pepper shakers, expediter duties, stocking beverage stations, and preparing entrees and appetizers.

13. Plaintiffs performed these jobs at subminimum wages with great frequency.

14. Pursuant to their policy, Defendants did not adjust the Named Plaintiffs' pay, along with other employees' pay, to at least minimum wage when plaintiffs performed these jobs, and also refused to do so when plaintiffs perform these jobs for over 20% of their work day.

*Class Members*

15.  As described in more detail below, Class Members (or "Plaintiffs") are those employees of any Defendant from September 24, 2006 to the date of judgment who are similarly situated to the Named Plaintiffs in that they were also subject to Defendants' illegal pay policies which fail to pay minimum wage as set forth in more detail in this complaint.

**B.  Defendants**

16.  At all times relevant hereto, Plaintiffs were "employees" of Defendants as defined by the NYLL, § 651 and the FLSA, 29 U.S.C. §203(d).

17.  At all times relevant hereto, Defendants are "employer[s]" as defined in the NYLL, § 651, and the FLSA, 29 U.S.C. §203(d).

18.  Defendants own and operate restaurants in the state, are "enterprise[s]" as defined by the FLSA, 29 U.S.C. §203(r)(1), and are enterprises engaged in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. §203(s)(1).

19.  Defendants' employees are engaged in interstate commerce, and their annual gross volume of sales made or business done exceeds $500,000, exclusive of excise taxes.

20.  During the course of their employment by Defendants, Plaintiffs handled goods, including perishable produce and other food products that moved in interstate commerce.

21.  T.L. Cannon Corporation was co-founded by Defendants David A. Stein ("Stein") and Matthew J. Fairbairn ("Fairbairn") and incorporated in the State of Florida on March 7, 1990. It maintains corporate offices located at 220 Ponte Vedra Park Drive, Suite 100, Ponte Vedra Beach, Florida 32082 ("Florida Offices").

22. T.L. Cannon is a private company which, upon information and belief, is wholly owned and controlled by Stein and Fairbairn.

23. T.L. Cannon obtained the exclusive franchise development rights for Applebee's Neighborhood Grill & Bar Restaurants in New York State (excluding New York City) and most of Connecticut.

24. T.L. Cannon was registered to do business in the State of New York on June 27, 1990.

25. The T.L. Cannon Florida Offices are primarily responsible for payroll, accounts payable and financial processes for T.L. Cannon's Applebee's restaurants.

26. Additional corporate offices are located at 180 Lawrence Bell Drive, Suite 100, Williamsville, New York 14221 ("New York Offices").

27. The T.L. Cannon New York Offices are primarily responsible for public and guest relations, construction, marketing, human resources, benefits, and purchasing for T.L. Cannon's Applebee's restaurants.

28. T.L. Cannon's first Applebee's Restaurant was opened on March 12, 1991 in Rochester, New York, and, upon information and belief, was directly operated by T.L. Cannon.

29. The Applebee's restaurants owned and operated by T.L. Cannon vary somewhat in size and dimensions, but, on average, the typical restaurant has between 37 and 50 tables and can serve between 160 and 225 guests at one time. On a typical high-volume night such as Friday night, the restaurant can turn over every table in the restaurant to new customers about once every hour.

*T.L. Cannon Management Corp. & TLC Companies*

30. Over the years, the number of T.L. Cannon owned and operated Applebee's has grown to 60 stores with 54 of those stores located in New York State as of the date of this complaint.

31. Upon information and belief, in order to more efficiently operate and manage the franchised Applebee's restaurants under T.L. Cannon's control, Stein and Fairbairn created additional TLC Companies to help organize, systematize, and streamline operations of the various individual restaurants.

32. Accordingly, T.L. Cannon Management Corporation (originally T.L. Cantina, Corp.) was founded and incorporated in the state of Florida on December 21, 1994.

33. T.L. Cannon Management Corporation has the same officers and is located at the same Florida and New York Offices as T.L. Cannon Corporation.

34. T.L. Cannon Management Corporation was registered to do business in the State of New York on February 6, 1997.

35. Upon information and belief, T.L. Cannon Management Corp. is the entity that directly employs the company's officers and upper level employees (employees who do not work in a specific Applebee's restaurant, such as Regional Directors of Operations – R.D.O.'s – and lower level D.O.'s).

36. Upon additional information and belief, T.L. Cannon Management Corp. is also the entity through which Stein, Fairbairn and John A. Perry ("Perry") directly oversee and manage T.L. Cannon's various individual restaurants, including the setting and enforcement of company-wide policies, objectives, and goals.

*T.L. Cannon Corp. & TLC Companies*

37. As the size and number of T.L. Cannon's Applebee's Restaurants have grown over the years, Stein and Fairbairn also created various domestic limited liability companies registered in New York State to further organize T.L. Cannon's Applebee's Restaurants by "regions."

38. As such, the following wholly owned and controlled companies were created and incorporated in New York State as part of T.L. Cannon's corporate structure to organize, control, and manage T.L. Cannon's various New York State Applebee's restaurants:

> a. TLC Central, LLC, registered with the State of New York Dept. of State on June 3, 1998; and
>
> b. TLC West, LLC, registered with the State of New York Dept. of State on June 3, 1998; and
>
> c. TLC North, LLC, registered with the State of New York Dept. of State on May 17, 2004; and
>
> d. TLC Utica, LLC, registered with the State of New York Dept. of State on October 16, 2006.

39. Upon information and belief, the above referenced domestic LLC's provide a natural geographic organizational structure for T.L. Cannon's various Applebee's restaurants and are utilized as payroll companies for the employees of the individual stores located within the regions covered by the above named companies.

40. For example, upon information and belief, payroll and other corporate operations for T.L. Cannon's Applebee's stores in Western New York are organized through TLC West, LLC, and all employees of those restaurants, both hourly and manager, receive paychecks issued under TLC West, LLC.

41. Moreover, upon information and belief, all of the above named companies are

under the effective control of T.L. Cannon with Stein, Fairbairn, and Perry serving as the sole officers of each company.

### *T.L. Cannon Individual Defendants*

42. Stein and Fairbairn are also the co-founders and, upon information and belief, the sole owners of T.L. Cannon Corp. and T.L. Cannon Management Corp.

43. Upon information and belief, Defendant Stein is the Chairman for both T.L. Cannon Corp. and T.L. Cannon Management Corp.

44. Upon information and belief, Defendant Stein is also the co-owner and an officer of TLC Central, LLC, TLC West, LLC, TLC North, LLC and TLC Utica, LLC.

45. Upon information and belief, Defendant Fairbairn is the President of T.L. Cannon Corp. and the Chief Executive Officer of T.L. Cannon Management Corp.

46. Upon information and belief, Defendant Fairbairn is also the co-owner and President of TLC Central, LLC, TLC West, LLC, TLC North, LLC, and TLC Utica, LLC.

47. Upon information and belief, Defendant Perry is the Director of Operations for T.L. Cannon and the President of T.L. Cannon Management Corp.

48. Upon information and belief, Defendant Perry is directly in charge of the overall operations of T.L. Cannon's Applebee's Restaurants and Perry reports directly to Defendants Stein and Fairbairn.

49. As such, Perry is primarily responsible for implementing Stein and Fairbairn's business decisions as they pertain to T.L. Cannon's Applebee's Restaurants, including but not limited to decisions concerning company labor guidelines, store budgets, and other financial controls.

50. Stein, Fairbairn, and Perry have been involved with T.L. Cannon's operation of

Applebee's Restaurants in New York State since T.L. Cannon's initial formation in 1990.

## COUNT I
### Violation of the New York Labor Law – Minimum Wages
### Class Action

51.  This count arises from Defendants' willful violation of the NYLL, New York Minimum Wage Act, Article 19, § 650 et seq., for Defendants' failure to pay Named Plaintiffs and the class of employees that they seek to represent all their earned minimum wages. Named Plaintiffs and the class are current and former employees of Defendants who are due, and who have not been paid, minimum wages under the provisions of the NYLL. Plaintiffs bring Count I as a class action under Rule 23.

52.  Defendants have a practice of paying Plaintiffs subminimum wages.

53.  Defendants pay Plaintiffs these wages even though Plaintiffs perform jobs that are not within the scope of the "Food service worker" definition under the NYLL or associated regulations.

54.  For example, Defendants' policy is to pay the Plaintiffs subminimum wages even when the Plaintiffs are performing jobs unrelated to their tipped jobs.

55.  Additionally, Defendants' policy is to pay the Plaintiffs subminimum wages even on days in which the Plaintiffs spend more than 20% of their work day performing non-tipped occupations.

56.  Further, Defendants' policy is to pay the Plaintiffs subminimum wages even on days in which the Plaintiffs are assigned to work in an occupation in which tips are not customarily received.

57.  Specifically, Defendants' policy is to utilize Plaintiffs to perform "back of the house" duties and other jobs that are not tipped jobs.

58.   Thus, as described above, Defendants regularly requires Plaintiffs to perform such jobs as food preparation and general restaurant cleaning, but continued to pay Plaintiffs subminimum wages while the employees are engaged in those jobs.

59.   Defendants' policy requires the Plaintiffs to perform these jobs with such frequency that Plaintiffs will spend more than 20% of day performing such jobs, but the Defendants will still pay subminimum wages.

60.   Defendants' practices violate the minimum wage provisions of the NYLL.

61.   Plaintiffs will seek to certify Count I as a class action, and ask the Court to determine the rights of the class, enjoin the illegal conduct, order the payment of other damages due, and to direct Defendants to account for all back wages, penalties and prejudgment interest thereon due to the Plaintiff and the class that they seek to represent.

62.   Count I is brought as a class action because the class members similarly situated to Named Plaintiffs are so numerous that joinder of all members is impracticable. Named Plaintiffs therefore bring this action on their own behalf as aggrieved employees, and in their representative capacities, against Defendants. Named Plaintiffs and similarly-situated persons are equally affected by the minimum wage violations of Defendants, and the relief sought is for the benefit of Named Plaintiffs and the class that Named Plaintiffs seek to represent.

63.   The issues involved in this lawsuit present common questions of law and fact. These common questions of law and fact predominate over the variations which may exist between members of the classes, if any. The Named Plaintiffs and the class of similarly-situated persons on one hand, and Defendants on the other, have a commonality of interest in the subject matter and remedy sought, namely owed minimum wages plus penalties,

interest, attorneys' fees and the cost of this lawsuit. The individual Named Plaintiffs believe and assert that they are able to fairly and adequately represent and protect the interests of the class. If individual actions were required to be brought by each of the similarly-situated persons injured or affected, it would necessarily result in multiplicity of lawsuits, creating a hardship to the individuals, to the Court, and to Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

64. The books and records of Defendants are material to Plaintiffs' action as they disclose certain of the hours worked by each employee and the rate of pay for that work.

65. Defendants violated the NYLL by failing to compensate Plaintiffs and members of the class consistent with the minimum wage provisions.

WHEREFORE, Plaintiffs and the class pray for judgment against Defendants as follows:

(a) an order preliminarily and permanently restraining Defendants from engaging in the aforementioned pay violations;

(b) an award of the value of Plaintiffs' and Class Members' unpaid wages and overtime;

(c) an award crediting Plaintiffs and Class Members for all hours worked;

(d) an additional amount as liquidated damages up to one-hundred percent of the total amount of wages found to be due;

(e) an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' and Class Members' rights;

(f) an award of pre- and post-judgment interest;

(g) the amount equal to the value which would make Plaintiffs and Class Members whole for the violations; and

(h) such other and further legal or equitable relief as this Court deems to be just and appropriate.

## COUNT II
### Violation of the Fair Labor Standards Act -- Minimum Wages
### Section 216(b) Collective Action

66. Plaintiffs hereby reallege and incorporate paragraphs 1 through 65 of this Complaint.

67. This count arises from Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, for their failure to pay minimum wages to the Plaintiffs. Plaintiffs bring this claim as a collective action under Section 16(b) of the Act. 29 U.S.C. §216(b).

68. Plaintiffs are not exempt from the minimum wage provisions of the Fair Labor Standards Act.

69. Defendants' policy is to not pay Plaintiffs the legally required minimum wage even when the Plaintiffs are performing jobs unrelated to their tipped job.

70. Defendants' policy is also not to pay Plaintiffs the legally required minimum wage even when the Plaintiffs are spending more than 20% of their time on jobs that are related to, but not themselves, their tipped jobs.

71. Defendants' practices violate the minimum wage provisions of the FLSA.

72. Because the Plaintiffs were all deprived minimum wage payments by the Defendants' policy, Plaintiffs are similarly situated to each other pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

  (a) judgment in the amount of the owed minimum wages for all time worked by Plaintiffs and those employees who join this lawsuit;

  (b) liquidated damages in an amount equal to the amount of unpaid minimum wages;

(c) an award crediting Plaintiffs and Class Members for all hours worked;

(d) an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' and Class Members' rights;

(e) an award of pre- and post-judgment interest; and

(f) such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

Dated: September 24, 2012

> THOMAS & SOLOMON LLP
>
> By: _____
> J. Nelson Thomas, Esq.
> Michael J. Lingle, Esq
> Justin M. Cordello, Esq.
> *Attorney for Plaintiffs*
> 693 East Avenue
> Rochester, New York 14607
> Telephone: (585) 272-0540
> nthomas@theemploymentattorneys.com
> mlingle@theemploymentattorneys.com
> jcordello@theemploymentattorneys.com